UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CHARLES DENHAM, Derivatively on Behalf of TIVITY HEALTH, INC., | Case No.: |
| Plaintiff, | VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY, WASTE OF CORPORATE ASSETS, AND UNJUST ENRICHMENT |
| v. | |
| DONATO TRAMUTO, ADAM HOLLAND, GLENN HARGREAVES, KEVIN G. WILLS, BRADLEY S. KARRO, PAUL H. KECKLEY, CONAN J. LAUGHLIN, ROBERT GRECZYN, LEE A. SHAPIRO, ARCHELLE GEORGIOU, PETER HUDSON, and MARY JANE ENGLAND, | |
| Defendants, | |
| -and- | |
| TIVITY HEALTH, INC., a Delaware Corporation, | |
| Nominal Defendant. | DEMAND FOR JURY TRIAL |

Plaintiff, by his attorneys, submits this Verified Stockholder Derivative Complaint for Breach of Fiduciary Duty, Waste of Corporate Assets, and Unjust Enrichment. Plaintiff alleges the following on information and belief, except as to the allegations specifically pertaining to plaintiff which are based on personal knowledge. This complaint is also based on the investigation of plaintiff's counsel, which included, among other things, a review of public filings with the U.S. Securities and Exchange Commission ("SEC") and a review of news reports, press releases, and other publicly available sources.

## NATURE AND SUMMARY OF THE ACTION

1.     This is a stockholder derivative action brought by plaintiff on behalf of nominal defendant Tivity Health, Inc. ("Tivity" or the "Company") against certain of its officers and directors for breaches of fiduciary duties, waste of corporate assets, unjust enrichment, and violations of law.  These wrongs resulted in hundreds of millions of dollars in damages to Tivity's reputation, goodwill, and standing in the business community.  Moreover, these actions have exposed the Company to hundreds of millions of dollars in potential liability for violations of state and federal law.

2.     Tivity is a nationwide provider of healthcare services, offering an array of physical health and fitness services by developing and managing networks of gyms and fitness centers.  The Company targets health consumers aged fifty and older through its three programs, SilverSneakers® senior fitness ("SilverSneakers"), Prime® fitness ("Prime"), and WholeHealth Living™ ("WholeHealth").  The SilverSneakers program, the Company's largest and most profitable service, is marketed as a free fitness program for seniors who are members of Medicare Advantage, Medicare Supplement, and Group Retiree health plans.  Through the SilverSneakers program, seniors on these health plans have access to over 16,000 gym and fitness centers within Tivity's network.

3.     To generate revenue, the Company relies on fees paid through its customer contracts with individual members and health plans.  Health plans provide the Company the largest customer pool, and thus, are the highest revenue producer for Tivity.  Over one-third of Tivity's total revenue in fiscal 2016, 36%, came from just two clients.[1]  These two clients, UnitedHealthcare, Inc. ("UnitedHealthcare") and Humana, Inc. ("Humana"), are among the

_____

[1] According to the Company's most recent Annual Report on Form 10-K filed with the SEC on March 6, 2017.

largest health insurance companies in the United States. Both UnitedHealthcare and Humana service members of Medicare Advantage, Medicare Supplement, and Group Retiree plans. Through these plans, the Company boasts that 14.8 million members are eligible to become SilverSneakers members.

4. Tivity is dependent on consistent and long-term business relationships with its clients. This is because fees collected from those clients, including UnitedHealthcare, are the sole source of the Company's revenue. Losing such a client would pose a significant threat to the Company's continued financial stability and success. Consequently, contract renewal is a significant indicator of the Company's growth potential and the source and sustainability of its revenue.

5. Of Tivity's two primary clients, UnitedHealthcare has become a vital source of revenue for the Company throughout their twenty-year relationship. Tivity's contract with UnitedHealthcare was due to expire in 2017, and negotiations between the Company and UnitedHealthcare over its impending contract renewal took place early that year. Throughout that year, Tivity's officers, including its Company's Chief Executive Officer ("CEO"), defendant Donato Tramuto ("Tramuto"), touted a 99% contract renewal rate for 2018, producing profitable growth and increasing stockholder value by increasing client base penetration and client returns. The Company's continuous affirmations of future growth were made in the face of rising competition from its top client, UnitedHealthcare, which the Company's management and directors knew existed. Particularly, during fiscal year 2017, UnitedHealthcare introduced its own pilot fitness program in two states that was completely in-sourced and self-sustaining, without the need for Tivity's external SilverSneakers fitness program.

6.     In April 2017, the Company announced a three-year renewal of the SilverSneakers contract with UnitedHealthcare based on supposedly positive contract negotiations.  Defendant Tramuto claimed the renewal was "a clear indication of the value of both our brand and the services provided to our customers and their member through the SilverSneakers program."  On the alleged strength of the Company's performance, the Company increased its financial guidance for the full year 2017 from a range of $540 million to $550 million to a range of $550 million to $558 million.  Tivity also modified its adjusted earnings per diluted share from its previous range of $144 to $1.52 per share to a range of $1.50 to $1.58.

7.     The Individual Defendants (as defined herein) caused or allowed repeated false and misleading public statements that concealed material, adverse information regarding the increased competition posed to Tivity's top revenue-producing service, SilverSneakers, from its client, UnitedHealthcare.  By omitting this information and touting Tivity's operations, financial, financial prospects, and the effectiveness of its disclosure controls and procedures, the Individual Defendants artificially inflated its financials throughout the relevant period.

8.     While the Company's stock price was artificially inflated, certain Individual Defendants exploited their positions as corporate fiduciaries of Tivity and sold stock holdings for nearly *$125 million* in insider profits, with knowledge of material, adverse, and nonpublic information regarding the Company's business practices, operations, financials, financial prospects, and lack of disclosure controls and procedures.

9.     In reality, one of Tivity's biggest clients has become its biggest competitor.  As detailed further below, from at least February 24, 2017 through the present, the Individual Defendants caused the Company to conceal UnitedHealthcare's impending rollout of a plan to extend its own fitness program to seniors, increasing its reach to eleven states in 2018.  This plan

places one of Tivity's top revenue-producing clients, UnitedHealthcare, in direct competition with the Company's services and significantly reduces future revenues.

10. Despite this impending rollout, the Individual Defendants refused to reveal the risk of increased competition from UnitedHealthcare and the attending loss of revenue from the healthcare provider. This truth was not revealed until November 6, 2017, when UnitedHealthcare issued a press release entitled "UnitedHealthcare Adds New Fitness Benefit to Medicare Advantage Plans in Austin." The press release reported that people enrolled in UnitedHealthcare Medicare Advantage plans in eleven different states became eligible to use the healthcare company's own Optum Fitness Advantage program ("Optum Fitness"). Through Optum Fitness, UnitedHealthcare plan participants can now access exercise classes, workout equipment, and other social activities "through a large network of participating fitness centers." As UnitedHealthcare serves one in five Medicare beneficiaries throughout the U.S., including more than 4.3 million people on Medicare Advantage, UnitedHealthcare will rival SilverSneakers for clients through its extension of Optum Fitness benefit program for seniors.

11. The exposure of the Individual Defendants' wrongful acts and omissions, and their prior false and misleading statements regarding the Company's business practices, operations, financials, financial prospects, and lack of disclosures controls and procedures, has caused the Company to suffer significant damages and harm. Immediately following issuance of UnitedHealthcare press release, Tivity's share price fell $16.45 per share (or approximately 34%), on unusually high trading volume, to close at $31.60 per share on November 6, 2017, compared to the previous trading day price of $48.05 per share. This news erased approximately $651.7 million in market capitalization in a single day.

12.     Further, as a direct result of this unlawful course of conduct, the Company is now the subject of a federal securities class action lawsuit filed in the United States District Court for the Middle District of Tennessee on behalf of investors who purchased Tivity's shares.

13.     Thus, plaintiff rightfully brings this action in the name of, and on behalf of, Tivity to vindicate the Company's rights against the Individual Defendants named herein, and to hold them responsible for the damages that they, as wayward fiduciaries, have caused—and continue to cause—the Company.

## JURISDICTION AND VENUE

14.     Jurisdiction is conferred by 28 U.S.C. §1332.  Complete diversity among the parties exists and the amount in controversy exceeds $75,000, exclusive of interests and costs.

15.     This Court has jurisdiction over each defendant named herein because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District to render the exercise of jurisdiction by the District courts permissible under traditional notions of fair play and substantial justice.

16.     Venue is proper in this Court in accordance with 28 U.S.C. §1391 because: (i) Tivity maintains its principal place of business in this District; (ii) one or more of the defendants either resides in or maintains executive offices in this District; (iii) a substantial portion of the transactions and wrongs complained of herein, including the defendants' primary participation in the wrongful acts detailed herein, and aiding and abetting and conspiracy in violation of fiduciary duties owed to Tivity, occurred in this District; and (iv) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

**Plaintiff**

17.    Plaintiff Charles Denham has been a Tivity stockholder since June 2017, and is currently, and at all relevant times has been, a holder of Tivity common stock.  Plaintiff is a citizen of Kentucky.

**Nominal Defendant**

18.    Nominal defendant Tivity is a Delaware corporation with principal executive offices located at 701 Cool Springs Boulevard, Franklin, Tennessee.  Accordingly, Tivity is a citizen of Delaware and Tennessee.  Tivity is a provider of fitness and health improvement programs focused on targeted population health for those aged fifty and over.  The Company operates three primary programs: SilverSneakers, Prime, and WholeHealth.  The Company's fitness networks encompass approximately 16,000 participating locations and more than 1,000 alternative locations that provide classes outside of traditional fitness centers.  As of February 28, 2017, Tivity had approximately 500 employees.

**Defendants**

19.    Defendant Tramuto is Tivity's CEO and President and has been since November 2015 and a director and has been since May 2013.  Defendant Tramuto was also Tivity's Chairman of the Board of Directors (the "Board") from June 2014 to October 2015.  Defendant Tramuto is named as a defendant in a related securities class action complaint that alleges he violated sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act").  Defendant Tramuto either knew, was reckless, or was grossly negligent in not knowing that: (i) UnitedHealthcare intended to expand its fitness benefits program to seniors in 2018; (ii) this expansion would significantly decrease Tivity's client base and pose a direct competition to Tivity's core revenue-producing program, SilverSneakers; (iii) the Company was downplaying

the competitive risk to its business prospects associated with UnitedHealthcare's fitness benefit extension; (iv) Tivity fiduciaries failed to disclose that they were aware of UnitedHealthcare's plan to expand its senior fitness benefits program, Optum Fitness; and (v) the Company failed to maintain adequate disclosure controls and procedures with respect to Tivity's operations. Tivity paid defendant Tramuto the following compensation as an executive:

| Year | Salary | Nonequity Incentive Plan Compensation | All Other Compensation | Total |
|------|--------|---------------------------------------|------------------------|-------|
| 2016 | $850,000 | $1,416,667 | $289,744 | $2,556,411 |

Defendant Tramuto is a citizen of Tennessee.

20.     Defendant Adam Holland ("Holland") is Tivity's Chief Financial Officer ("CFO") and has been since June 2017. Defendant Holland is named as a defendant in a related securities class action complaint that alleges he violated sections 10(b) and 20(a) of the Exchange Act. Defendant Holland either knew, was reckless, or was grossly negligent in not knowing that: (i) UnitedHealthcare intended to expand its fitness benefits program to seniors in 2018; (ii) this expansion would significantly decrease Tivity's client base and pose a direct competition to Tivity's core revenue-producing program, SilverSneakers; (iii) the Company was downplaying the competitive risk to its business prospects associated with UnitedHealthcare's fitness benefit extension; (iv) Tivity fiduciaries failed to disclose that they were aware of UnitedHealthcare's plan to expand its senior fitness benefits program, Optum Fitness; and (v) the Company failed to maintain adequate disclosure controls and procedures with respect to Tivity's operations. Defendant Holland is a citizen of Tennessee.

21.     Defendant Glenn Hargreaves ("Hargreaves") is Tivity's Chief Accounting Officer and has been since July 2012. Defendant Hargreaves was also Tivity's Interim CFO from November 2016 to June 2017; Controller from January 2011 to July 2012; and Director of Tax

from April 2005 to January 2011. Defendant Hargreaves is named as a defendant in a related securities class action complaint that alleges he violated sections 10(b) and 20(a) of the Exchange Act. Defendant Hargreaves either knew, was reckless, or was grossly negligent in not knowing that: (i) UnitedHealthcare intended to expand its fitness benefits program to seniors in 2018; (ii) this expansion would significantly decrease Tivity's client base and pose a direct competition to Tivity's core revenue-producing program, SilverSneakers; (iii) the Company was downplaying the competitive risk to its business prospects associated with UnitedHealthcare's fitness benefit extension; (iv) Tivity fiduciaries failed to disclose that they were aware of UnitedHealthcare's plan to expand its senior fitness benefits program, Optum Fitness; and (v) the Company failed to maintain adequate disclosure controls and procedures with respect to Tivity's operations. While in possession of material, nonpublic information concerning Tivity's true business health, defendant Hargreaves sold 54,774 shares of his stock for $2,073,825.35 in proceeds. Tivity paid defendant Hargreaves the following compensation as an executive:

| Year | Salary | Bonus | Stock Awards | Nonequity Incentive Plan Compensation | All Other Compensation | Total |
|------|--------|-------|--------------|----------------------------------------|------------------------|-------|
| 2016 | $295,848 | $35,000 | $399,718 | $260,600 | $40,911 | $1,032,077 |

Defendant Hargreaves is a citizen of Tennessee.

22. Defendant Kevin G. Wills ("Wills") is Tivity's Chairman of the Board and has been since November 2015 and director and has been since May 2012. Defendant Wills either knew or was reckless in not knowing that: (i) UnitedHealthcare intended to expand its fitness benefits program to seniors in 2018; (ii) this expansion would significantly decrease Tivity's client base and pose a direct competition to Tivity's core revenue-producing program, SilverSneakers; (iii) the Company was downplaying the competitive risk to its business prospects associated with UnitedHealthcare's fitness benefit extension; (iv) Tivity fiduciaries failed to

disclose that they were aware of UnitedHealthcare's plan to expand its senior fitness benefits program, Optum Fitness; and (v) the Company failed to maintain adequate disclosure controls and procedures with respect to Tivity's operations.  Tivity paid defendant Wills the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Total |
|---|---|---|---|
| 2016 | $200,000 | $99,998 | $299,998 |

Defendant Wills is a citizen of Florida.

23.     Defendant Bradley S. Karro ("Karro") is a Tivity director and has been since June 2014.  Defendant Karro knew or was reckless in not knowing that: (i) UnitedHealthcare intended to expand its fitness benefits program to seniors in 2018; (ii) this expansion would significantly decrease Tivity's client base and pose a direct competition to Tivity's core revenue-producing program, SilverSneakers; (iii) the Company was downplaying the competitive risk to its business prospects associated with UnitedHealthcare's fitness benefit extension; (iv) Tivity fiduciaries failed to disclose that they were aware of UnitedHealthcare's plan to expand its senior fitness benefits program, Optum Fitness; and (v) the Company failed to maintain adequate disclosure controls and procedures with respect to Tivity's operations.  Tivity paid defendant Karro the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Total |
|---|---|---|---|
| 2016 | $105,000 | $99,998 | $204,998 |

Defendant Karro is a citizen of Tennessee.

24.     Defendant Paul H. Keckley ("Keckley") is a Tivity director and has been since June 2014.  Defendant Keckley knew or was reckless in not knowing that: (i) UnitedHealthcare intended to expand its fitness benefits program to seniors in 2018; (ii) this expansion would significantly decrease Tivity's client base and pose a direct competition to Tivity's core revenue-

producing program, SilverSneakers; (iii) the Company was downplaying the competitive risk to its business prospects associated with UnitedHealthcare's fitness benefit extension; (iv) Tivity fiduciaries failed to disclose that they were aware of UnitedHealthcare's plan to expand its senior fitness benefits program, Optum Fitness; and (v) the Company failed to maintain adequate disclosure controls and procedures with respect to Tivity's operations. Tivity paid defendant Keckley the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Total |
|---|---|---|---|
| 2016 | $95,000 | $99,998 | $194,998 |

Defendant Keckley is a citizen of Tennessee.

25. Defendant Conan J. Laughlin ("Laughlin") is a Tivity director and has been since June 2014. Defendant Laughlin is a member of Tivity's Audit Committee and has been since June 2014. Defendant Laughlin knew or was reckless in not knowing that: (i) UnitedHealthcare intended to expand its fitness benefits program to seniors in 2018; (ii) this expansion would significantly decrease Tivity's client base and pose a direct competition to Tivity's core revenue-producing program, SilverSneakers; (iii) the Company was downplaying the competitive risk to its business prospects associated with UnitedHealthcare's fitness benefit extension; (iv) Tivity fiduciaries failed to disclose that they were aware of UnitedHealthcare's plan to expand its senior fitness benefits program, Optum Fitness; and (v) the Company failed to maintain adequate disclosure controls and procedures with respect to Tivity's operations. While in possession of material, nonpublic information concerning Tivity's true business health, defendant Laughlin sold 3,750,000 shares of Tivity stock for $122,925,000 in proceeds through his investment firm, North Tide Capital, LLC ("North Tide Capital"), of which he is the founder, portfolio manager, and managing manager. Tivity paid defendant Laughlin the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Total |
|---|---|---|---|
| 2016 | $110,000 | $99,998 | $209,998 |

Defendant Laughlin is a citizen of Massachusetts.

26.     Defendant Robert Greczyn ("Greczyn") is a Tivity director and has been since May 2015. Defendant Greczyn knew or was reckless in not knowing that: (i) UnitedHealthcare intended to expand its fitness benefits program to seniors in 2018; (ii) this expansion would significantly decrease Tivity's client base and pose a direct competition to Tivity's core revenue-producing program, SilverSneakers; (iii) the Company was downplaying the competitive risk to its business prospects associated with UnitedHealthcare's fitness benefit extension; (iv) Tivity fiduciaries failed to disclose that they were aware of UnitedHealthcare's plan to expand its senior fitness benefits program, Optum Fitness; and (v) the Company failed to maintain adequate disclosure controls and procedures with respect to Tivity's operations. Tivity paid defendant Greczyn the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Total |
|---|---|---|---|
| 2016 | $95,000 | $99,998 | $194,998 |

Defendant Greczyn is a citizen of North Carolina.

27.     Defendant Lee A. Shapiro ("Shapiro") is a Tivity director and has been since May 2015. Defendant Shapiro is also Chairman of Tivity's Audit Committee and has been since November 2015 and a member of that committee and has been since May 2015. Defendant Shapiro knew or was reckless in not knowing that: (i) UnitedHealthcare intended to expand its fitness benefits program to seniors in 2018; (ii) this expansion would significantly decrease Tivity's client base and pose a direct competition to Tivity's core revenue-producing program, SilverSneakers; (iii) the Company was downplaying the competitive risk to its business prospects associated with UnitedHealthcare's fitness benefit extension; (iv) Tivity fiduciaries failed to

- 12 -

disclose that they were aware of UnitedHealthcare's plan to expand its senior fitness benefits program, Optum Fitness; and (v) the Company failed to maintain adequate disclosure controls and procedures with respect to Tivity's operations. Tivity paid defendant Shapiro the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Total |
| --- | --- | --- | --- |
| 2016 | $115,000 | $99,998 | $214,998 |

Defendant Shapiro is a citizen of Illinois.

28. Defendant Archelle Georgiou ("Georgiou") is a Tivity director and has been since May 2016. Defendant Georgiou knew or was reckless in not knowing that: (i) UnitedHealthcare intended to expand its fitness benefits program to seniors in 2018; (ii) this expansion would significantly decrease Tivity's client base and pose a direct competition to Tivity's core revenue-producing program, SilverSneakers; (iii) the Company was downplaying the competitive risk to its business prospects associated with UnitedHealthcare's fitness benefit extension; (iv) Tivity fiduciaries failed to disclose that they were aware of UnitedHealthcare's plan to expand its senior fitness benefits program, Optum Fitness; and (v) the Company failed to maintain adequate disclosure controls and procedures with respect to Tivity's operations. Tivity paid defendant Georgiou the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Total |
| --- | --- | --- | --- |
| 2016 | $55,417 | $99,998 | $155,415 |

Defendant Georgiou is a citizen of Minnesota.

29. Defendant Peter Hudson ("Hudson") is a Tivity director and has been since May 2016. Defendant Hudson is also a member of Tivity's Audit Committee and has been since May 2016. Defendant Hudson knew or was reckless in not knowing that: (i) UnitedHealthcare intended to expand its fitness benefits program to seniors in 2018; (ii) this expansion would

significantly decrease Tivity's client base and pose a direct competition to Tivity's core revenue-producing program, SilverSneakers; (iii) the Company was downplaying the competitive risk to its business prospects associated with UnitedHealthcare's fitness benefit extension; (iv) Tivity fiduciaries failed to disclose that they were aware of UnitedHealthcare's plan to expand its senior fitness benefits program, Optum Fitness; and (v) the Company failed to maintain adequate disclosure controls and procedures with respect to Tivity's operations. Tivity paid defendant Hudson the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Total |
|---|---|---|---|
| 2016 | $58,333 | $99,998 | $158,331 |

Defendant Hudson is a citizen of Colorado.

30. Defendant Mary Jane England ("England") was a Tivity director from September 2004 to May 2017. Defendant England knew or was reckless in not knowing that: (i) UnitedHealthcare intended to expand its fitness benefits program to seniors in 2018; (ii) this expansion would significantly decrease Tivity's client base and pose a direct competition to Tivity's core revenue-producing program, SilverSneakers; (iii) the Company was downplaying the competitive risk to its business prospects associated with UnitedHealthcare's fitness benefit extension; (iv) Tivity fiduciaries failed to disclose that they were aware of UnitedHealthcare's plan to expand its senior fitness benefits program, Optum Fitness; and (v) the Company failed to maintain adequate disclosure controls and procedures with respect to Tivity's operations. Tivity paid defendant England the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Total |
|---|---|---|---|
| 2016 | $105,000 | $99,998 | $204,998 |

Defendant England is a citizen of Massachusetts.

31. The defendants identified in ¶¶19-21 are referred to herein as the "Officer

- 14 -

Defendants." The defendants identified in ¶¶19, 22-30 are referred to herein as the "Director Defendants." The defendants identified in ¶¶25, 27, 29 are referred to herein as the "Audit Committee Defendants." The defendants identified in ¶¶21, 25 are referred to herein as the "Insider Selling Defendants." Collectively, the defendants identified in ¶¶19-30 are referred to herein as the "Individual Defendants."

## DUTIES OF THE INDIVIDUAL DEFENDANTS

**Fiduciary Duties**

32.     By reason of their positions as officers, directors, and/or fiduciaries of Tivity, and because of their ability to control the business and corporate affairs of Tivity, the Individual Defendants owed, and owe, the Company and its stockholders fiduciary obligations of trust, loyalty, good faith, and due care, and were, and are, required to use their utmost ability to control and manage Tivity in a fair, just, honest, and equitable manner. The Individual Defendants were, and are, required to act in furtherance of the best interests of Tivity and its stockholders, so as to benefit all stockholders equally, and not in furtherance of their personal interests or benefit.

33.     Each director and officer of the Company owed, and owes, to Tivity, and its stockholders, the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

34.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of Tivity, were able to, and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein. Because of their advisory, executive, managerial, and directorial positions with Tivity, each of the Individual Defendants had knowledge of material, nonpublic information regarding the Company. In addition, as officers and/or directors of a publicly-held company, the Individual Defendants had a duty to promptly

disseminate accurate and truthful information with regard to the Company's business practices, operations, financials, financial prospects, compliance policies, and internal controls, so that the market price of the Company's stock would be based on truthful and accurate information.

35. To discharge their duties, the officers and directors of Tivity were required to exercise reasonable and prudent supervision over the management, policies, practices, and controls of the Company. By virtue of such duties, the officers and directors of Tivity were required to, among other things:

(a) ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority, and disseminating truthful and accurate statements to the investing public;

(b) conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest-quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(c) refrain from selling Tivity stock on the basis of nonpublic insider information;

(d) properly and accurately guide stockholders and analysts as to the true business practices, operations, financials, financial prospects, compliance policies, and internal controls of the Company at any given time, including making accurate statements about the Company's business practices, operations, financials, financial prospects, compliance policies, and internal controls;

(e) remain informed as to how Tivity conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, make reasonable inquiry in connection therewith, and take steps to correct such conditions or practices,

and make such disclosures as necessary to comply with securities laws;

> (f) refrain from trading on material, adverse, and nonpublic information; and

> (g) ensure that Tivity was operated in a diligent, honest, and prudent manner

in compliance with all applicable laws, rules, and regulations.

**Duties Pursuant to the Company's Code of Business Conduct**

36. The Individual Defendants, as officers and/or directors of Tivity, were also bound by the Company's Code of Business Conduct (the "Code") which, according to the Code, sets out basic principles to guide all directors, officers, and employees of Tivity, who are required to know and conduct themselves in accordance with the Code, as well as applicable laws and regulations, and to avoid the appearance of improper behavior.

37. With respect to the accuracy of financial records titled, "Accuracy of our Books and Records," the Code provides:

> Federal law requires that the Company maintain adequate controls to assure that the information set forth in books and records is accurate, timely and complete, including financial records, expense reports, time-worked reports, customer and vendor contracts, and personnel-related documents completed by colleagues.

> The deliberate falsification of Company contracts, reports or records is a serious and direct violation of the Code and may be a violation of law.

> Falsification of records consists of altering, fabricating, falsifying, forging or deliberately omitting any part of a document, contract or record for the purpose of gaining an advantage, or misrepresenting the value of the document, contract, or record.

> Colleagues must ensure that all disclosures in our periodic reports and submissions filed with the Securities and Exchange Commission ("SEC") and other public communications are full, fair, accurate, timely, and understandable.

> Colleagues responsible for recording transactions or events into the Company's records may not intentionally delay them, or intentionally record incorrect, incomplete or misleading information about any transaction or event.

Other colleagues who are not responsible for recording transactions or events must ensure that all information submitted for recording is timely, accurate, and complete.

38. In addition, the Code requires officers and directors to comply with internal control for financial reporting, stating:

**Financial Controls**

Every colleague is responsible for creating and complying with the Company's internal controls for financial reporting.

Please immediately report any of the following directly to the Audit Committee of the Board of Directors:

1. any concerns or information about significant deficiencies in the design or operation of internal controls that could adversely affect the Company's ability to record, process, summarize or report financial data; and

2. any fraud involving Company assets, contracts, or colleagues.

**Additional Duties of the Audit Committee**

39. In addition to the aforementioned fiduciary duties, the members of the Audit Committee owed specific duties to Tivity under the Audit Committee's Charter (the "Audit Charter"). According to the Audit Charter, the Audit Committee is responsible for "overseeing the accounting and financial reporting processes of the Company and the audits of the Company's financial statements, [and] the Company's compliance with legal and regulatory requirements," among other things. To discharge these duties, "the Committee is empowered to investigate any matter with full access to all books, records, facilities and personnel of the Company and the power to retain, at the Company's expense, outside counsel, auditors or other experts or consultants for this purpose."

40. Specifically, according to the Audit Charter, the Audit Committee must review and discuss with management the Company's financial statements, stating:

The Committee shall review and discuss with management and the outside

auditors the annual audited and quarterly unaudited financial statements, the Company's disclosures under "Management's Discussion and Analysis of Financial Condition and Results of Operation," and the selection, application and disclosure of critical accounting policies and practices used in such financial statements. The Committee also shall review and discuss with the outside auditors the matters required to be discussed by Statements of Auditing Standards ("SAS") No. 61 and No. 90, as may be modified or supplemented. The discussion of the financial statements and the related critical accounting policies and practices shall occur prior to the public release of such financial statements and the discussion of the related disclosure, including the "Management's Discussion and Analysis of Financial Condition and Results of Operation," shall occur prior to the filing of the Form 10-Q or 10-K. Additionally, based on such review and discussion, the Committee shall consider whether to recommend to the Board that the audited financial statements be included in the Company's Annual Report on Form 10-K.

41. The Audit Committee is charged with assessing and managing risk and the quality and adequacy of the Company's controls and processes that materially affect its public statements. The Audit Charter stated:

The Committee shall discuss with management and the outside auditors policies with respect to risk assessment and risk management and the quality and adequacy of the Company's internal controls and processes that could materially affect the Company's financial statements and financial reporting. The Committee shall meet separately, at least quarterly, with management, and with the outside auditors and shall review with the outside auditors any audit problems or difficulties and management's response.

42. The Company maintained an Audit Charter, last approved on February 1, 2017 and effective during the relevant period, that imposed the same, or substantially and materially the same or similar, duties on the members of the Audit Committee as those set forth above.

**Control, Access, and Authority**

43. The Individual Defendants, because of their positions of control and authority as directors and/or officers of Tivity, were able to, and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by Tivity.

44. Because of their advisory, executive, managerial, and directorial positions with

Tivity, each of the Individual Defendants had access to adverse, nonpublic information about the financial condition, operations, and improper representations of Tivity.

45.     At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and of Tivity, and was at all times acting within the course and scope of such agency.

**Breaches of Duties**

46.     Each Individual Defendant, by virtue of his or her position as a director and/or officer, owed to the Company and to its stockholders the fiduciary duty of loyalty and good faith and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets.  The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as officers and directors of Tivity, the absence of good faith on their part, and a reckless disregard for their duties to the Company that the Individual Defendants were aware or reckless in not being aware posed a risk of serious injury to the Company.

47.     The Individual Defendants breached their duty of loyalty and good faith by allowing defendants to cause, or by themselves causing, the Company to engage in making improper statements to the public and Tivity's stockholders, improper practices that wasted the Company's assets, and caused Tivity to incur substantial damage.

48.     The Individual Defendants, because of their positions of control and authority as officers and/or directors of Tivity, were able to and did, directly or indirectly, exercise control over the wrongful acts complained of herein.  The Individual Defendants also failed to prevent the other Individual Defendants from taking such illegal actions.  As a result, and in addition to the damage the Company has already incurred, Tivity has expended, and will continue to

expend, significant sums of money.

**CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION**

49.     In committing the wrongful acts alleged herein, the Individual Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with, and conspired with, one another in furtherance of their wrongdoing.  In addition to the wrongful conduct herein alleged as giving rise to primary liability, the Individual Defendants further aided and abetted and/or assisted each other in breaching their respective duties.

50.     During all times relevant hereto, the Individual Defendants, collectively and individually, initiated a course of conduct that was designed to and did: (i) conceal harmful information relating to Tivity's business practices, operations, financials, financial prospects, and lack of disclosure controls and procedures that rendered statements in the Company's SEC filings and public announcements improper; (ii) deceive the investing public, including stockholders of Tivity, regarding the Individual Defendants' management of Tivity's operations; and (iii) enhance the Individual Defendants' executive and directorial positions at Tivity and the profits, power, and prestige that the Individual Defendants enjoyed as a result of holding these positions.  In furtherance of this plan, conspiracy, and course of conduct, the Individual Defendants, collectively and individually, took the actions set forth herein.

51.     The Individual Defendants engaged in a conspiracy, common enterprise, and/or common course of conduct.  During this time, the Individual Defendants caused the Company to issue improper financial statements.

52.     The purpose and effect of the Individual Defendants' conspiracy, common enterprise, and/or common course of conduct was, among other things, to disguise the Individual Defendants' violations of law, breaches of fiduciary duty, waste of corporate assets, and unjust

enrichment; and to conceal adverse information concerning the Company's operations, financial condition, and future business prospects.

53.     The Individual Defendants accomplished their conspiracy, common enterprise, and/or common course of conduct by causing the Company to purposefully or recklessly release improper statements.  Because the actions described herein occurred under the authority of the Board, each of the Individual Defendants was a direct, necessary, and substantial participant in the conspiracy, common enterprise, and/or common course of conduct complained of herein.

54.     Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein.  In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each Individual Defendant acted with knowledge of the primary wrongdoing, substantially assisted in the accomplishment of that wrongdoing, and was aware of his or her overall contribution to and in furtherance of the wrongdoing.

## SUBSTANTIVE ALLEGATIONS

**Background on the Company**

55.     Tivity provides healthcare services nationwide, including various health and fitness services through its network of gyms and fitness facilities.  The Company is focused on targeted population health for consumers aged fifty and older.  Its fitness networks encompass approximately 16,000 participating locations and more than 1,000 alternative locations that provide classes outside of traditional fitness centers.  Its primary senior fitness program is SilverSneakers, offered to members of Medicare Advantage, Medicare Supplement, and Group Retiree plans serviced by healthcare companies.

56.     Several healthcare companies, including the largest private insurer in the U.S., UnitedHealthcare, outsource their fitness benefit programs to Tivity.  Along with Humana,

UnitedHealthcare is one of Tivity's most important clients, with their combined business making up 36% of Tivity's revenue in fiscal year 2016. Fees collected from these SilverSneakers clients, and others, constituted 80% of the Company's revenue in fiscal year 2017.

57.　　Throughout 2017, the Company emphasized the importance of growing membership of the SilverSneakers program and maintaining the existing customer base. The Company implemented its "A-B-C" strategy as an initiative to meet these goals. The A-B-C strategy involves the following goals: "(A) add new members in our three existing networks, [SilverSneakers, Prime, and WholeHealth]; (B) build engagement among current members; and (C) collaborate with partners to add new products and services that will leverage the value of our brand." Through the A-B-C strategy, the Company claimed that it would be better positioned to "drive further growth in 2018."

58.　　Also, in 2017, UnitedHealthcare began piloting its own fitness advantage program, called Optum Fitness, in two states to determine whether UnitedHealthcare could in-source its own fitness service for Medicare members. Similar to Tivity's SilverSneakers program, UnitedHealthcare provided members with access to affiliated gyms, fitness centers, and classes. The initial pilot program served as a litmus test for extending and expanding the Optum Fitness program beyond the two states.

59.　　In the face of this impending competition with Tivity's SilverSneakers program, the Company was negotiating during this same period with UnitedHealthcare to renew its contract to provide the SilverSneakers program for the next three years. Despite UnitedHealthcare's introduction of the pilot program for Optum Fitness, analysts at Oppenheimer, in a February 24, 2017 report, stated that Tivity's management had "expressed high confidence in successful renewal" in fiscal year 2017.

**The Individual Defendants Caused Tivity to Make Materially False and Misleading Statements During the Relevant Period**

60.     Beginning in 2017, the Individual Defendants made repeated improper statements about the Company's promising financial standing and the effectiveness of its disclosure controls and procedures.  In truth, the Individual Defendants were in breach of their fiduciary duties by engaging in or causing the concealment of UnitedHealthcare's plans to expand its fitness benefit to seniors in direct competition to Tivity's core revenue-producing SilverSneakers program.

61.     On February 23, 2017, Tivity issued a press release, reporting the Company's financial and operating results for the fourth fiscal quarter and fiscal year ended December 31, 2016 (the "FY 2016 Press Release").  For the fourth fiscal quarter, Tivity reported revenues of $124.9 million, up 10.1% from the $113.5 million reported in the same fiscal quarter of 2015. The FY 2016 Press Release reported net income as $12.1 million, increasing 31.2% from $9.2 million for the fourth fiscal quarter of 2015, while net income from continuing operations per diluted share grew 20%, from $0.25 per diluted share in 2015 to $0.30 per diluted share for the same fiscal quarter.  Adjusted earnings before interest, taxes, depreciation, and amortization ("EBITDA") was $29.1 million for the fourth fiscal quarter.  In terms of its fitness and health improvement programs, including SilverSneakers, defendant Tramuto reported that "[t]hrough the combination of attractive demographics, strong program alignment, and our demonstrated capabilities as a unique, scaled market leader, we are confident of our long-term opportunity to produce profitable growth and to increase shareholder value."  The FY 2016 Press Release stated:

> NASHVILLE, Tenn. (February 23, 2017) – Tivity Health, Inc. (NASDAQ: TVTY) today announced financial results for the fourth quarter and year ended December 31, 2016.
>
> Fourth-Quarter 2016 Financial Highlights

- Revenues were $124.9 million, up 10.1% from $113.5 million for the fourth quarter of 2015.

- Net income from continuing operations was $12.1 million, an increase of 31.2% from $9.2 million for the fourth quarter of 2015. Adjusted net income from continuing operations increased 44.7%, to $14.0 million from $9.7 million for the fourth quarter of 2015, excluding pre-tax business separation costs and restructuring charges of $5.2 million and a $2.2 million positive adjustment to depreciation expense for the fourth quarter of 2016, and excluding pre-tax restructuring charges of $0.7 million for the fourth quarter of 2015. See pages 11-12 for a reconciliation of non-GAAP financial measures.

- Net income from continuing operations per diluted share grew 20.0%, to $0.30 from $0.25 for the fourth quarter of 2015, and adjusted net income from continuing operations per diluted share grew 34.6%, to $0.35 from $0.26 for the fourth quarter of 2015.

- Adjusted EBITDA was $29.1 million, or 23.3% of revenues, which excludes business separation and restructuring expenses, for the fourth quarter of 2016. See pages 11-12 for a reconciliation of non-GAAP financial measures.

- Funded debt was reduced $40.1 million during the quarter, including the conversion of a $20.0 million convertible subordinated promissory note by CareFirst Holdings, LLC in exchange for 892,458 shares of Tivity Health common stock. Funded debt at year-end declined to $218.1 million and the ratio of total debt to trailing 12 months EBITDA, as calculated under the Company's credit facility, improved to 1.9.

*  *  *

Summary

"Since the completion of its business divestiture in July 2016, Tivity Health's consistent financial performance supports our expectation that our focused and streamlined business model will continue producing predictable and profitable growth," continued Mr. Tramuto. "We have built a strong market position as a leading provider of fitness and health improvement programs targeted to those who are age 50 and older. With approximately 111 million Americans in our targeted population, and more than 300,000 turning 65 every month, we have an exciting, long-term opportunity to scale our business, both by adding new members, programs, products and networks and by increasing participation among our millions of current members. Our ability to achieve these goals is enhanced by our programs, including our flagship program, SilverSneakers, that are highly aligned with the interests of our customers in keeping their members healthy and socialized and with the interests of our fitness center partners in driving fitness center volumes. *Through the combination of attractive*

*demographics, strong program alignment, and our demonstrated capabilities as a unique, scaled market leader, we are confident of our long-term opportunity to produce profitable growth and to increase shareholder value*."

62.     On March 6, 2017, Tivity filed its Annual Report on Form 10-K with the SEC reiterated the earnings figures contained in the FY 2016 Press Release (the "2016 Form 10-K"). Defendants Tramuto, Hargreaves, Wills, England, Georgiou, Greczyn, Hudson, Karro, Keckley, Laughlin, and Shapiro signed the 2016 Form 10-K.  Additionally, the 2016 Form 10-K affirmed the Company remained competitive due to the "depth and breadth of our fitness center network relationships."  While the 2016 Form 10-K asserted that "health plan customers could attempt to offer services themselves that compete directly with our offerings or stop providing our offerings to their members," the Individual Defendants omitted and failed to disclose that UnitedHealthcare intended to extend its senior fitness program in direct competition with SilverSneakers.

63.     The 2016 Form 10-K contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by defendants Tramuto and Hargreaves, in their capacities as Tivity's CEO and CFO, respectively, which certified that "the financial statements, and other financial information included in [the 2016 Form 10-K], fairly present in all material respects the financial condition, results of operations and cash flows of the [Company] as of, and for, the periods presented in this report."

64.     On April 27, 2017, Tivity issued a press release reporting the Company's financial and operating results for the first fiscal quarter ended March 31, 2017 (the "April 27, 2017 Press Release").  For the first fiscal quarter, Tivity reported revenues of $141 million, up 11.9% from the $126 million reported in the same fiscal quarter of 2016.  The April 27, 2017 Press Release reported net income as $15.5 million, compared to $19.2 million for the first fiscal quarter of 2016.  Net income from continuing operations per diluted share was $0.38 per diluted share

compared to $0.52 per diluted share for the same fiscal quarter of 2016. Adjusted EBITDA increased 26.3%, from $25.2 million for the first fiscal quarter of 2016 to $31.8 million. The Company further boasted that it had renewed its SilverSneakers contract with UnitedHealthcare for three additional years, which defendant Tramuto attributed to "a clear indication of the value of both our brand and the services provided to our customers and their members through the SilverSneakers program." The April 27, 2017 Press Release stated:

> NASHVILLE, Tenn. (April 27, 2017) – Tivity Health, Inc. (NASDAQ: TVTY) today announced financial results for the first quarter ended March 31, 2017.
>
> First-Quarter 2017 Financial Highlights
>
> - Revenues increased by 11.9% to $141.0 million compared with $126.0 million for the first quarter of 2016, driven by growth in all three of the Company's product lines.
>
> - Net income from continuing operations was $15.5 million compared with $19.2 million for the first quarter of 2016. Results for the first quarter of 2017 include an effective income tax rate of 37.7% and the impact of pre-tax business separation and restructuring charges totaling $2.4 million. Results for the first quarter of 2016 include an effective income tax rate of 0%, due to tax benefits derived from utilizing net operating loss carryforwards from 2015 that were previously subject to a valuation allowance, as well as pre-tax restructuring charges of $39 thousand.
>
> - Adjusted net income from continuing operations, excluding business separation and restructuring charges, was $16.9 million for the first quarter of 2017 and $19.2 million for the first quarter of 2016. For illustration, had net income from continuing operations for the first quarter of 2016 been subject to a normalized tax rate of 40.0%, it would have been $11.5 million. See pages 10-12 for a reconciliation of non-GAAP financial measures.
>
> - Net income from continuing operations per diluted share was $0.38 compared with $0.52 for the first quarter of 2016, and adjusted net income from continuing operations per diluted share was $0.42 compared with $0.52 for the first quarter of 2016. For illustration, had net income from continuing operations for the first quarter of 2016 been subject to a normalized tax rate of 40.0%, net income from continuing operations per diluted share would have been $0.31. Weighted average diluted shares outstanding increased 10.0% for the first quarter of 2017 from the first quarter of 2016.

- Adjusted EBITDA, which excluded business separation and restructuring expenses, increased 26.3% to $31.8 million compared with $25.2 million for the first quarter of 2016. Adjusted EBITDA margin increased to 22.6% for the first quarter of 2017 compared with 20.0% for the first quarter of 2016. See pages 10- 12 for a reconciliation of non-GAAP financial measures.

- Funded debt was $214.8 million at the end of the first quarter of 2017, and the ratio of total debt to trailing 12 months EBITDA, as calculated under the Company's then effective credit facility, improved to 1.8 from 1.9 at the end of 2016.

\* \* \*

"We are pleased with our first-quarter financial results," said Donato Tramuto, Tivity Health's Chief Executive Officer. "Due to the strength of this performance and the visibility it gives us for the rest of 2017, we have increased our financial guidance for the full year.

"***We are also pleased to announce a three-year renewal of our SilverSneakers® contract with UnitedHealth Group, continuing a 20-year relationship with a partner who shares our commitment to active lifestyles. This renewal and many other renewals we have achieved to date are a clear indication of the value of both our brand and the services provided to our customers and their members through the SilverSneakers program***."

Glenn Hargreaves, Tivity Health's Interim Chief Financial Officer, added, "During the first quarter, we essentially completed our restructuring and business separation initiatives and realized cost savings that annualize to approximately $15 million from the restructuring, which contributed to expanding our adjusted EBITDA margin.

"Tivity Health's cash flow from operations for the first quarter of 2017 totaled $3.0 million. First-quarter cash flow reflects our expected seasonality due to the payment of the 2016 colleague bonus and the full-year 2016 401(k) Plan matching contributions. Cash flow for the first quarter was also reduced due to the timing of payments from two long-term customers, which have since been paid. Our guidance for free cash flow for the full year remains unchanged."

65. In conjunction with the April 27, 2017 Press Release, the Company's fiduciaries held a conference call for analysts and investors that same day. During the call, defendant Tramuto reiterated that UnitedHealthcare remained committed to reinvest in SilverSneakers, stating:

This thought provides I believe a great segue to our announcement today of the three year renewable of our contract with United Health extending our 20 year relationship with one of our largest and oldest clients. ***We believe United Health values our ongoing commitment to reinvest in SilverSneakers and they understand the strength of our brand because of both its importance to their Medicare Advantage membership and the results we produce.*** This improved depth of understanding led to a renewal that was completed on favorable terms.

66.     Furthermore, during the April 27, 2017 conference call, defendant Tramuto answered a question from a Barclays' Capital analyst regarding the Company's prospects for contract renewal in 2018.  Instead of indicating that UnitedHealthcare intended to expand its fitness benefit to seniors, defendant Tramuto stated that the "intensity of the renewals" surpassed his "milestone."  The question and answer went as follows:

[Analyst]: Okay, perfect. And then just in terms of timing and how we should be thinking about contract updates the Medicare Advantage plans have their bids do June, and I'm assuming this is kind of the height of the let's make sure we have all our benefit design docked in a row. ***And so any other color you know obviously it's great to get united behind you, any other color on you know big contracts both positively or negatively in terms of that 2018 I guess what I would call the selling season now?***

[Defendant]: Yeah, what I can say to you, and I hope now that the level of confidence is there, we did say to you last month or it may have been two months ago we had our last earnings call that we were going to get this united wrap up. ***Let me tell you I am absolutely pleased at the intensity of the renewals and where we are at this point, in fact I would say we were ahead of what I would have had as my milestone, so it's a very solid outlook***.

67.     On July 27, 2017, Tivity issued a press release reporting the Company's financial and operating results for the second fiscal quarter ended June 30, 2017 (the "July 27, 2017 Press Release").  For the second fiscal quarter, Tivity reported revenues of $138.9 million, up 11.1% from the $125 million reported in the same fiscal quarter of 2016.  The July 27, 2017 Press Release reported net income as $17.2 million, compared to $20 million for the second fiscal quarter of 2016.  EBITDA increased 21.9% to $31.7 million compared to $26 million for the second fiscal quarter of 2016.  In the July 27, 2017 Press Release, defendant Tramuto touted the

"long-term opportunity to increase participation" in its SilverSneakers program, without mentioning UnitedHealthcare's plan to extend its senior fitness program in direct competition with SilverSneakers. The July 27, 2017 Press Release stated:

NASHVILLE, Tenn. (July 27, 2017) – Tivity Health, Inc. (NASDAQ: TVTY) today announced financial results for the second quarter ended June 30, 2017.

Second-Quarter 2017 Financial Highlights

- Revenues increased by 11.1% to $138.9 million compared with $125.0 million for the second quarter of 2016, driven by growth in all three of the Company's product lines.

- Net income from continuing operations was $17.2 million, or $0.41 per diluted share, compared with $20.0 million, or $0.54 per diluted share, for the second quarter of 2016. Results for the second quarter of 2017 include an effective income tax rate of 35.7%. Results for the second quarter of 2016 include an effective income tax rate of 0%, due to tax benefits derived from utilizing net operating loss carryforwards from 2015 that were previously subject to a valuation allowance. For illustration, had net income from continuing operations for the second quarter of 2016 been subject to a normalized tax rate of 40.0%, net income would have been $12.0 million or $0.32 per diluted share.

- Weighted average diluted shares outstanding for the second quarter of 2017 increased to 42.4 million, 13.8% higher than the second quarter of 2016. The diluted share count increase was significantly impacted by the 191% increase in the Company's weighted average stock price in the second quarter of 2017 compared with the second quarter of 2016.

- EBITDA increased 21.9% to $31.7 million compared with $26.0 million for the second quarter of 2016. EBITDA margin increased to 22.8% for the second quarter of 2017 compared with 20.8% for the second quarter of 2016. See pages 9-10 for a reconciliation of non-GAAP financial measures.

- Cash flow from operations was $37.0 million for the second quarter of 2017, and free cash flow totaled $36.0 million. Funded debt was $189.8 million at the end of the second quarter of 2017, and the ratio of total debt to trailing 12 months EBITDA, as calculated under the Company's credit facility, improved to 1.5 from 1.9 at the end of 2016. At June 30, 2017, the Company had cash and cash equivalents of $7.8 million.

\* \* \*

"Tivity Health continued to produce strong operating and financial results during the second quarter, through fierce execution from our colleagues throughout the Company," said Donato Tramuto, Tivity Health's Chief Executive Officer. "Due to our performance for the first six months of 2017 and the substantial visibility our business model provides into the remainder of the year, we believe we are well-positioned to achieve our financial guidance for the full year.

"We are also pleased with our ongoing work on a variety of pilot projects that are designed to increase member engagement and participation and, thereby, improve the future rate of our revenue growth. We plan to continue investing in these projects throughout 2017 and into next year, and we expect to begin generating an initial return on investment beginning in 2018. *We believe we have a tremendous long-term opportunity to increase participation in both our SilverSneakers® and Prime® programs within each program's existing base of millions of members who are already eligible to enroll and participate.* While much work remains to be done on the pilots to understand their results and potential, we are encouraged by developments thus far. We believe this initiative will enable us to significantly expand the number of our members whose physical, emotional and social well-being are improved by our programs, helping them lead their best lives, with dignity, vitality and purpose."

Adam Holland, Tivity Health's Chief Financial Officer, added, "As anticipated, our second-quarter financial performance enabled us to make a reduction in funded debt during the quarter, even as we invested in the Company pilots and began to build our cash balance. We expect to continue each of these actions in the second half of 2017."

68. On October 26, 2017, Tivity issued a press release reporting the Company's financial and operating results for the third fiscal quarter ended September 30, 2017 (the "October 26, 2017 Press Release"). For the third fiscal quarter, Tivity reported revenues of $137.7 million, up 10.1% from the $125 million reported in the same fiscal quarter of 2016. The October 26, 2017 Press Release reported net income as $19.9 million, or $0.46 per diluted share, compared to $4.8 million, or $0.12 per diluted share in the third fiscal quarter of 2016. EBITDA was $35.3 million compared to $24.4 million for the third fiscal quarter of 2016. In the press release, defendant Tramuto asserted Medicare Advantage programs, including SilverSneakers, "will increase our growth rate beyond historical levels by increasing member enrollment and participation." The October 26, 2017 Press Release stated:

- 31 -

NASHVILLE, Tenn. (October 26, 2017) – Tivity Health, Inc. (NASDAQ: TVTY) today announced financial results for the third quarter and nine months ended September 30, 2017.

Third-Quarter 2017 Financial Highlights

- Revenues increased by 10.1% to $137.7 million driven by growth in all three of the Company's product lines.  This compares to revenues of $125.0 million for the third quarter of 2016.

- Net income from continuing operations was $19.9 million, or $0.46 per diluted share, compared with $4.8 million, or $0.12 per diluted share, for the third quarter of 2016. Results for the third quarter of 2017 include an effective income tax rate of 34.3%.  Adjusted net income from continuing operations for the third quarter of 2016 was $11.9 million, or $0.31 per diluted share, which excludes income tax expense related to the first half of 2016, restructuring charges, business separation costs and income attributable to the reversal of deferred tax asset valuation allowance.  See pages 9-12 for a reconciliation of non-GAAP financial measures.

- Weighted average diluted shares outstanding increased 13.3% to 43.5 million compared with the third quarter of 2016.  The most significant factor driving the diluted share count increase was the 76% increase in the Company's weighted average stock price for the third quarter of 2017 compared with the third quarter of 2016.

- EBITDA was $35.3 million or 25.7% of revenue. EBITDA for the third quarter of 2016 was $24.4 million, and adjusted EBITDA was $26.2 million, or 21.0% of revenue, which excluded restructuring costs and business separation costs.

- Cash flow from operations was $33.6 million, and free cash flow totaled $31.8 million.  Net funded debt was $151.3 million and the ratio of total debt to trailing 12 months EBITDA, as calculated under the Company's credit facility, improved to 1.2, compared with 1.9 at the end of 2016. At September 30, 2017, the Company had cash and cash equivalents of $4.9 million.

\* \* \*

"We are very pleased with the substantial growth in earnings and our overall operating and financial performance for the third quarter," said Donato Tramuto, Tivity Health's Chief Executive Officer.  "This performance reflects consistent execution by our colleagues throughout the Company and the power of our brand and has enabled us to raise our financial guidance for 2017.  Although multiple hurricanes in September and October disrupted our members and networks in the affected areas, we believe the value our members place on the SilverSneakers®

brand and on the program, to some degree mutes the impact of that disruption. This value is tangibly evident in our annual member surveys, as well as in SilverSneakers' high Net Promoter Score.

"In addition to our strong financial performance for the quarter, we have seen continuing success in targeted initiatives designed to increase member awareness of our services through our social media presence, which is part of our broader marketing strategy. We will continue our work on these projects in the fourth quarter during the height of the Medicare Advantage open enrollment period. ***In 2018, we look forward to scaling the best of these projects that we believe will increase our growth rate beyond historical levels by increasing member enrollment and participation***."

Adam Holland, Tivity Health's Chief Financial Officer, added, "Our third quarter margin profile improved from the first half of 2017 due to lower than anticipated operating costs, primarily due to the average cost of member visits, and from reduced investment expenses due to timing. Our revised financial guidance incorporates previously discussed higher spending in the fourth quarter to support the Medicare Advantage open enrollment period, other planned marketing initiatives and a modest increase in spending on information technology. During the fourth quarter, we expect to continue reducing funded debt and building our cash position, concurrent with ongoing investments to drive increased member awareness and engagement."

69. On the same day, the Company's fiduciaries held a conference call with analysts and investors to discuss the operating results for the third fiscal quarter of 2017. Ignoring UnitedHealthcare's plan to extend its senior fitness program in direct competition with SilverSneakers, defendant Tramuto proclaimed that the Company achieved over 99% contract renewal increasing client penetration for 2018. Defendant Tramuto stated:

In closing, let me now give you my perspective on our focus and opportunities for 2018. Now that Chip has provided an initial profile for our growth and margins.

First, our markets are very attractive with Medicare Advantage continuing to expand with some industry estimates for growth of as much as 8% for 2018.

Second, we already know that our awareness projects in digital strategy are a unique conduit for enrollment and eligibility checks.

Third, our high Net Promoter Score strongly difference – differentiates the SilverSneakers brand. I've indicated that we are focused on improving, both the strength of our brand and continuing to advance our NPS.

Fourth, we also believe that there's an opportunity in helping prospective health plan customers understand how they can leverage our investments in our NPS and digital strategy to possibly influence their own star ratings.

***Fifth, we expect 2018 to benefit from improved performance across our functional areas. For example, we achieved a contract renewal rate of over 99% for 2018. This hasn't happened since 2011 in the company. We produced a few new contracts that increased client penetration and had some former clients return home and come back to us***.

Lastly, we saw solid growth in our Prime business. 2017 year-to-date showed promising results in some of the co-marketing initiatives that we have launched. We expect to build on that success in 2018 with some broader newly designed marketing initiatives with a key partner that covers more than 27 million eligible lives.

***We're also approaching the end of 2017 with lots of exciting initiatives, lots of momentum and lots of opportunity.*** We look forward to talking with you for our fourth quarter call in February to update you on our plans for 2018 and to provide a more detailed and refined financial outlook for the year based on final enrollment data being available to us for SilverSneakers in January.

## THE TRUTH EMERGES

70.     The truth behind the Company's business prospects and Individual Defendants' wrongdoing began to emerge on November 6, 2017, when UnitedHealthcare issued a press release announcing that the health care company had added its own fitness benefit to Medicare Advantage participants. UnitedHealthcare's expansion of its own Optum Fitness Advantage program into eleven states placed UnitedHealthcare in direct competition with Tivity's SilverSneakers fitness program for seniors. The November 6, 2017 UnitedHealthcare press release contradicted the Individual Defendants' prior positive statements that the Company was expanding its SilverSneakers' member enrollment and participation. The press release stated:

**UnitedHealthcare Adds New Fitness Benefit to Medicare Advantage Plans in Austin**

**Optum Fitness Advantage available at no additional cost to many people in UnitedHealthcare Medicare Advantage Plans**

November 06, 2017 10:15 AM Eastern Standard Time

AUSTIN, Texas--(BUSINESS WIRE)--People enrolled in UnitedHealthcare Medicare Advantage plans in Austin will soon have a new fitness benefit that offers access to exercise classes, workout equipment and social activities at participating fitness locations.

***In January 2018, Optum Fitness Advantage will be available at no additional cost to people enrolled in eligible UnitedHealthcare Medicare Advantage plans in 11 states through a large network of participating fitness centers. Plan participants will have access to the same services, privileges, classes and programs as the fitness centers' standard members, including waiver of all enrollment fees.***

"Optum Fitness Advantage offers people enrolled in UnitedHealthcare Medicare Advantage plans an opportunity to stay active and engaged in their communities in a way that supports their overall health and wellbeing," said Chris Abbott, CEO of UnitedHealthcare Medicare & Retirement in Texas.

Fitness centers participating in the Optum Fitness Advantage program in Austin include participating locations of 24 Hour Fitness, Anytime Fitness, Gold's Gym, LA Fitness, Snap Fitness and YouFit Health Clubs. Locations also include local participating YMCAs.

The Optum Fitness Advantage program, launched by UnitedHealthcare in Washington state and New Jersey in January 2017, has been well received by local Medicare Advantage plan participants.

"I go to my local YMCA almost daily at no additional cost, which means a lot when living on a fixed income," said Nancy Chiu, a UnitedHealthcare Medicare Advantage member in New Jersey. "I am grateful that UnitedHealthcare is offering a fitness program that helps me improve my health and well-being."

"Anytime Fitness and Self Esteem Brands look forward to serving UnitedHealthcare Medicare Advantage members as part of the Optum Fitness Advantage network," said Chuck Runyon, CEO of Anytime Fitness. "We look forward to working together to provide more fitness choices to seniors, both inside and outside of the gym."

UnitedHealthcare, which has exclusive rights to offer AARP-branded Medicare plans, serves more than 4.3 million people in Medicare Advantage, 4.9 million people through its portfolio of Part D prescription drug plans, and 4.4 million beneficiaries through its Medicare supplement plans.

Altogether, UnitedHealthcare serves one in five Medicare beneficiaries nationwide.

71.     Several analysts expressed concern that UnitedHealthcare's decision to strike out

on its own with a competing fitness advantage program could have detrimental effects on the

possibility of future contract renewals, and thus Tivity's revenue stream. In an article dated November 6, 2017 entitled "UnitedHealth Group Enters Senior Fitness Market Race," published in Minnesota's *Star Tribune*, an analyst from Oppenheimer stated that the move was a "first test" to determine if "United[Healthcare] might try to in-source [its fitness advantage program], or convert all their members to this Optum fitness program instead of SilverSneakers." Another analyst with Jeffries quoted in the article echoed this concern, stating that "UnitedHealth could choose to scale down or terminate its contract" with Tivity.

72.    On this news, Tivity's stock plummeted more than 34%, or $16.45 per share on November 6, 2017, to close at $31.60 compared to the previous trading day's closing of $48.05 per share, erasing more than $651.7 million in market capitalization.

## REASONS THE STATEMENTS WERE IMPROPER

73.    The statements referenced above were each improper when made because they failed to disclose and misrepresented the following material, adverse facts, which the Individual Defendants knew, consciously disregarded, or were reckless in not knowing:

(a)    UnitedHealthcare intended to expand its fitness benefits program to seniors in 2018;

(b)    this expansion would significantly decrease Tivity's client base and pose a direct competition to Tivity's core revenue-producing program, SilverSneakers;

(c)    that the Company was downplaying the competitive risk to its business prospects associated with UnitedHealthcare's fitness benefit extension;

(d)    that Tivity fiduciaries failed to disclose that they were aware of UnitedHealthcare's plan to expand its senior fitness benefits program, Optum Fitness;

(e)    that the Company failed to maintain adequate disclosure controls and procedures with respect to Tivity's operations; and

- 36 -

(f)    as a result of the foregoing, the officers' and directors' representations concerning the Company's business, prospects, and financial standing were improper.

### INSIDER SALES BY DEFENDANTS LAUGHLIN AND HARGREAVES

74.    Rather than providing the market with correct information, the Insider Selling Defendants used their knowledge of Tivity's material, nonpublic information to sell holdings in Tivity while the Company's stock was artificially inflated. As officers and directors of Tivity, defendants were privy to material, nonpublic information about the Company's true business health. While in possession of this knowledge, the Insider Selling Defendants each made suspicious sales for their own personal benefits.

75.    While in possession of this knowledge, defendant Laughlin sold 3,750,000 shares of his indirectly held Tivity stock for proceeds of $122,925,000, through his investment firm, North Tide Capital, of which he is the founder, portfolio manager, and managing manager. Defendant Laughlin's sales are suspicious given that North Tide Capital disposed of 83% of its total shares held during this time, and sold none of its shares the prior year. Defendant Laughlin's sales were also timed to maximize profit from Tivity's then artificially inflated stock price.

76.    While in possession of this knowledge, defendant Hargreaves sold 54,774 shares of his personally held Tivity stock for proceeds of $2,073,825.35. Defendant Hargreaves's sales are suspicious given that he sold 47.7% of his total shares during this time, and sold none of his shares the prior year. Defendant Hargreaves' sales were also timed to maximize profit from Tivity's then artificially inflated stock price.

77.    In sum, defendants Laughlin and Hargreaves sold over $124.9 million worth of stock at artificially inflated stock prices as detailed by the table below:

| Insider Last Name | Transaction Date | Shares | Price | Proceeds |
|---|---|---|---|---|
| | | | | |
| **HARGREAVES** | 8/3/2017 | 10,671 | $38.00 | $405,498.00 |
| **Current Chief Accounting Officer** | 8/4/2017 | 10,434 | $38.00 | $396,492.00 |
| | 8/10/2017 | 5,758 | $37.77 | $217,479.66 |
| | 8/10/2017 | 1,200 | $37.76 | $45,312.00 |
| | 8/11/2017 | 3,063 | $37.75 | $115,628.25 |
| | 8/11/2017 | 200 | $37.75 | $7,550.00 |
| | 8/21/2017 | 13,568 | $37.78 | $512,599.04 |
| | 8/21/2017 | 6,621 | $37.78 | $250,141.38 |
| | 8/21/2017 | 3,259 | $37.78 | $123,125.02 |
| | | 54,774 | | $2,073,825.35 |
| | | | | |
| **LAUGHLIN** | 3/1/2017 | 1,750,000 | $28.30 | $49,525,000.00 |
| **Current Director** | 3/1/2017 | 250,000 | $28.30 | $7,075,000.00 |
| | 8/1/2017 | 1,300,000 | $37.90 | $49,270,000.00 |
| | 8/1/2017 | 300,000 | $37.90 | $11,370,000.00 |
| | 8/1/2017 | 150,000 | $37.90 | $5,685,000.00 |
| | | 3,750,000 | | $122,925,000.00 |
| | | **Total Shares** | | **Total Sales** |
| | | 3,804,774 | | $124,998,825.35 |

## DAMAGES TO TIVITY

78.     As a result of the Individual Defendants' improprieties, Tivity disseminated improper, public statements that omitted or failed to disclose that the Company would face substantial competition from UnitedHealthcare in 2018 with the rollout of its Optum Fitness program. In addition, the Company was caused to disseminate false and misleading statements, and to omit material information to make such statements not false and misleading when made. This misconduct has devastated Tivity's credibility. Further, Tivity is the subject of a securities class action. Tivity has been, and will continue to be, severely damaged and injured by the Individual Defendants' misconduct.

79.     As a direct and proximate result of the Individual Defendants' actions, as alleged above, Tivity's market capitalization has been substantially damaged, having lost almost $651.7 million, or 34%, market capitalization as a result of the conduct described herein.

80. Tivity's scheme to conceal material, adverse information from the investing public also damaged its reputation within the business community and in the capital markets. In addition to price, Tivity's current and potential customers consider a company's trustworthiness, stability, and ability to accurately describe its business operations. Tivity's ability to raise equity capital or debt on favorable terms in the future is now impaired. In addition, the Company stands to incur higher marginal costs of capital and debt because the improper statements and misleading projections disseminated by the Individual Defendants have materially increased the perceived risks of investing in and lending money to the Company.

81. Further, as a direct and proximate result of the Individual Defendants' conduct, Tivity has expended, and will continue to expend, significant sums of money. Such expenditures include, without limitation:

(a) costs incurred in investigating and defending Tivity and certain officers and directors in the securities class action for violations of federal securities laws, plus potentially tens of millions of dollars in settlement, or to satisfy an adverse judgment;

(b) costs incurred to investigate the wrongdoing internally; and

(c) costs incurred from compensation and benefits paid to defendants who have breached their duties to Tivity.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

82. Plaintiff brings this action derivatively in the right and for the benefit of Tivity to redress injuries suffered, and to be suffered, by Tivity as a direct result of breaches of fiduciary duty, waste of corporate assets, and unjust enrichment, as well as the aiding and abetting thereof, by the Individual Defendants. Tivity is named as a nominal defendant solely in a derivative capacity. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

83.     Plaintiff will adequately and fairly represent the interests of Tivity in enforcing and prosecuting its rights.

84.     Plaintiff has been a Tivity stockholder since June 2017, and is currently, and at all relevant times has been, a holder of Tivity common stock.

85.     The current Board of Tivity consists of the following nine individuals: defendants Tramuto, Wills, Georgiou, Greczyn, Hudson, Karro, Keckley, Laughlin, and Shapiro.  Plaintiff has not made any demand on the present Board to institute this action because such a demand would be futile, wasteful, and useless act, as set forth below.

**Demand Is Futile as to Defendants Tramuto, Wills, Georgiou, Greczyn, Hudson, Karro, Keckley, Laughlin, and Shapiro Because They Face a Substantial Likelihood of Liability for Their Misconduct**

86.     As alleged above, defendants Tramuto, Wills, Georgiou, Greczyn, Hudson, Karro, Keckley, Laughlin, and Shapiro breached their fiduciary duties of loyalty by making improper statements in the Company's SEC filings, press releases, and other public statements and presentations on behalf of the Company regarding Tivity's business practices, operations, financials, financial prospects, and disclosure controls and procedures were truthful, accurate, and complete.

87.     Defendants Tramuto, Wills, Georgiou, Greczyn, Hudson, Karro, Keckley, Laughlin, and Shapiro were responsible for reviewing and approving the Company's financial statements.  Defendants Tramuto, Wills, Georgiou, Greczyn, Hudson, Karro, Keckley, Laughlin, and Shapiro authorized false financial statements and public statements during the relevant period, as alleged herein, authorized additional false financial statements and public statements during the relevant period, as alleged herein, as well as failed to correct other statements the Officer Defendants made during the relevant period.  Accordingly, defendants Tramuto, Wills, Georgiou, Greczyn, Hudson, Karro, Keckley, Laughlin, and Shapiro were active participants in

breaches of duties of good faith, candor, and loyalty, and have subjected the Company to a lawsuit claiming violations of the federal securities laws. As a result, any demand upon defendants Tramuto, Wills, Georgiou, Greczyn, Hudson, Karro, Keckley, Laughlin, and Shapiro to bring suit against themselves or the Officer Defendants would be a useless and futile act.

88. Defendants Tramuto, Wills, Georgiou, Greczyn, Hudson, Karro, Keckley, Laughlin, and Shapiro caused and/or allowed the Company to engage in the unlawful conduct alleged herein, and defendants Tramuto, Wills, Georgiou, Greczyn, Hudson, Karro, Keckley, Laughlin, and Shapiro face a substantial likelihood of liability for causing Tivity to engage in such unlawful conduct. As is described above, defendants Tramuto, Wills, Georgiou, Greczyn, Hudson, Karro, Keckley, Laughlin, and Shapiro either knew and caused, or were reckless in not knowing, the false and misleading nature of the public statements and/or omissions alleged herein.

89. Additionally, defendants Tramuto, Wills, Georgiou, Greczyn, Hudson, Karro, Keckley, Laughlin, and Shapiro were specifically responsible for ensuring that Tivity had adequate disclosure controls and procedures regarding the Company's compliance with federal and state rules and regulations. Thus, defendants Tramuto, Wills, Georgiou, Greczyn, Hudson, Karro, Keckley, Laughlin, and Shapiro are directly responsible for Tivity's failure to adopt and implement such controls and procedures, and for the substantial damages Tivity is subject to in the ongoing securities class action. As such, defendants Tramuto, Wills, Georgiou, Greczyn, Hudson, Karro, Keckley, Laughlin, and Shapiro face a substantial likelihood of liability for the claims asserted herein. Demand is therefore, futile.

90. Defendants Hudson, Laughlin, and Shapiro, as members of the Audit Committee, reviewed and approved the improper statements and earnings guidance. The Audit Committee's

Charter provides that it is responsible for compliance with accounting, legal, and regulatory requirements. In particular, the Audit Committee is charged with "overseeing the accounting and financial reporting processes of the Company and the audits of the Company's financial statements." Thus, the Audit Committee Defendants were responsible for knowingly or recklessly allowing the improper statements related to the Company's earnings guidance, and financial and disclosure controls and procedures. Moreover, the Audit Committee Defendants reviewed and approved the improper public filings filed with the SEC. Despite their knowledge or reckless disregard, the Audit Committee Defendants caused these improper statements. Accordingly, the Audit Committee Defendants breached their fiduciary duty of loyalty because they participated in the wrongdoing described herein. Thus, defendants Hudson, Laughlin, and Shapiro face a substantial likelihood of liability for their breach of fiduciary duties so any demand upon them is futile.

91. Additionally, defendant Laughlin improperly sold Tivity stock under highly suspicious circumstances. Defendant Laughlin possessed material, nonpublic company information and used that information to benefit himself and his investment firm, North Tide Capital, of which he is the founder, portfolio manager, and managing manager. Defendant Laughlin sold stock based on this knowledge of material, nonpublic information regarding UnitedHealthcare's intention to extend its Optum Fitness program to its consumers, in direct competition with Tivity's SilverSneakers program. In particular, while in possession of material, adverse, and nonpublic information about Tivity, defendant Laughlin sold 3,750,000 shares of his indirectly held Tivity stock for proceeds of $122,925,000. Accordingly, defendant Laughlin faces a substantial likelihood of liability for breach of his fiduciary duty of loyalty. Any demand upon defendant Laughlin is futile.

**Demand Is Excused as to Defendant Tramuto Because He Lacks Independence**

92.     The principal professional occupation of defendant Tramuto is his employment with Tivity, pursuant to which he has received and continues to receive substantial monetary compensation and other benefits as alleged above.   Accordingly, defendant Tramuto lacks independence from defendants Wills, Georgiou, Greczyn, Hudson, Karro, Keckley, Laughlin, and Shapiro due to his interest in maintaining his executive position as CEO at Tivity.  This lack of independence renders defendant Tramuto incapable of impartially considering a demand to commence and vigorously prosecute this action.

93.     Plaintiff has not made any demand on stockholders of Tivity to institute this action because such a demand would be a futile and useless act for the following reasons:

(a)     Tivity is a publicly-traded company with hundreds, if not thousands of stockholders, with approximately 39.6 million shares outstanding as of October 31, 2017;

(b)     making a demand on such a number of stockholders would be impossible for plaintiff, who has no means of collecting the names, addresses, and/or phone numbers of Tivity stockholders; and

(c)     making demand on all stockholders would force plaintiff to incur excessive expense and obstacles, assuming all stockholders could even be individually identified with any degree of reasonable certainty.

## COUNT I

**Against the Individual Defendants for Breach of Fiduciary Duties**

94.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

95.     The Individual Defendants owed and owe Tivity fiduciary obligations.  By reason of their fiduciary relationships, the Individual Defendants owed and owe Tivity the highest

obligation of good faith, fair dealing, loyalty, and due care.

96.     The Individual Defendants and each of them, violated and breached their fiduciary duties of candor, good faith, and loyalty.  More specifically, the Individual Defendants violated their duty of good faith by creating a culture of lawlessness within Tivity, and/or consciously failing to prevent the Company from engaging in the unlawful acts complained of herein.

97.     The Officer Defendants either knew, were reckless, or were grossly negligent in disregarding the illegal activity of such substantial magnitude and duration.  The Officer Defendants either knew, were reckless, or were grossly negligent in not knowing that: (i) UnitedHealthcare intended to expand its fitness benefits program to seniors in 2018; (ii) this expansion would significantly decrease Tivity's client base and pose a direct competition to Tivity's core revenue-producing program, SilverSneakers; (iii) the Company was downplaying the competitive risk to its business prospects associated with UnitedHealthcare's fitness benefit extension; (iv) Tivity fiduciaries failed to disclose that they were aware of UnitedHealthcare's plan to expand its senior fitness benefits program, Optum Fitness; and (v) the Company failed to maintain adequate disclosure controls and procedures with respect to Tivity's operations. Accordingly, the Officer Defendants breached their duty of care and loyalty to the Company.

98.     The Director Defendants as directors of the Company, owed Tivity the highest duty of loyalty.  These defendants breached their duty of loyalty by recklessly permitting the improper activity concerning the Company's systematic and pervasive unlawful wrongdoing described herein.  The Director Defendants knew or were reckless in not knowing that: (i) UnitedHealthcare intended to expand its fitness benefits program to seniors in 2018; (ii) this expansion would significantly decrease Tivity's client base and pose a direct competition to

Tivity's core revenue-producing program, SilverSneakers; (iii) the Company was downplaying the competitive risk to its business prospects associated with UnitedHealthcare's fitness benefit extension; (iv) Tivity fiduciaries failed to disclose that they were aware of UnitedHealthcare's plan to expand its senior fitness benefits program, Optum Fitness; and (v) the Company failed to maintain adequate disclosure controls and procedures with respect to Tivity's operations. Accordingly, the Director Defendants breached their duty of loyalty to the Company.

99. The Audit Committee Defendants breached their fiduciary duty of loyalty by approving the statements described herein which were made during their tenure of the Audit Committee, which they knew or were reckless in not knowing contained improper statements and omissions. The Audit Committee Defendants completely and utterly failed in their duty of oversight, and failed in their duty to appropriately review financial results, as required by the Audit Committee Charter in effect at the time.

100. The Insider Selling Defendants breached their duty of loyalty by selling Tivity stock on the basis of the knowledge of the improper information described above before that information was revealed to the Company's stockholders. The information described above was proprietary, nonpublic information concerning the Company's future business prospects. It was a proprietary asset belonging to the Company, which the Insider Selling Defendants used for their own benefit when they sold Tivity common stock.

101. As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations, Tivity has sustained significant damages as alleged herein. As a result of the misconduct alleged herein, these defendants are liable to the Company.

102. Plaintiff, on behalf of Tivity, has no adequate remedy at law.

## COUNT II

### Against the Individual Defendants for Waste of Corporate Assets

103. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

104. The Individual Defendants breached their fiduciary duties by failing to properly supervise and monitor the adequacy of Tivity's disclosure controls and procedures, by issuing, causing the issuance of, and/or failing to correct the false and misleading statements identified herein, and by allowing the Company to engage in an illegal, unethical, and improper course of conduct, which was continuous, connected, and ongoing throughout the relevant period. It resulted in continuous, connected, and ongoing harm to the Company.

105. As a result of the misconduct described above, the Individual Defendants wasted corporate assets by: (i) paying excessive compensation and bonuses to certain of its executive officers; and (ii) incurring potentially millions of dollars of legal liability and/or legal costs to defend the Individual Defendants' unlawful actions, including defending the Company and its officers against the securities class action.

106. As a direct and proximate result of these defendants' breaches of fiduciary duties, the Company has suffered significant damages, as alleged herein. As a result of their waste of corporate assets, the Individual Defendants are liable to the Company.

107. Plaintiff, on behalf of Tivity, has no adequate remedy at law.

## COUNT III

### Against the Individual Defendants for Unjust Enrichment

108. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

109. By their wrongful acts and omissions, the Individual Defendants were unjustly

- 46 -

enriched at the expense of, and to the detriment of, Tivity. The Individual Defendants were unjustly enriched as a result of the compensation and director remuneration they received while breaching fiduciary duties owed to Tivity.

110. The Insider Selling Defendants sold Tivity stock while in possession of material, adverse nonpublic information that artificially inflated the price of Tivity stock. As a result, these defendants profited from their misconduct and were unjustly enriched through their exploitation of material and adverse inside information.

111. Plaintiff, as a stockholder and representative of Tivity, seeks restitution from these defendants, and each of them, and seeks an order of this Court disgorging all profits, benefits, and other compensation obtained by these defendants, and each of them, from their wrongful conduct and fiduciary breaches.

112. Plaintiff, on behalf of Tivity, has no adequate remedy at law.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff demands judgment as follows:

A.      Against all defendants for the amount of damages sustained by the Company as a result of the Individual Defendants' wrongdoing as alleged herein;

B.      Directing Tivity to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws, and to protect Tivity and its stockholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for stockholder vote resolutions for amendments to the Company's By-Laws or Articles of Incorporation, and taking such other action as may be necessary to place before stockholders for a vote the following corporate governance proposals or policies:

1.      a proposal to strengthen the Board's supervision of operations and compliance with applicable state and federal laws and regulations;

2.    a proposal to strengthen the Company's internal reporting and financial disclosure controls;

3.    a proposal to strengthen the Company's controls over operational controls;

4.    a provision to control insider selling;

5.    a proposal to develop and implement procedures for greater stockholder input into the policies and guidelines of the Board; and

6.    a provision to permit the stockholders of Tivity to nominate three candidates for election to the Board to replace existing directors;

C.    Extraordinary equitable and/or injunctive relief as permitted by law, equity, and state statutory provisions sued hereunder, including attaching, impounding, imposing a constructive trust on, or otherwise restricting the proceeds of defendants' trading activities or their other assets so as to assure that plaintiff on behalf of Tivity has an effective remedy;

D.    Awarding to Tivity restitution from the Individual Defendants, and ordering disgorgement of all profits, benefits, and other compensation obtained by each of them, including all ill-gotten gains from insider selling by defendants;

E.    Awarding to plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

F.    Granting such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: January 26, 2018                    By: _Wade B. Cowan_ (signature)
                                           _____
                                           WADE B. COWAN (BPR# 9403)
                                           Of Counsel Davies, Humphreys & Reese PLC
                                           85 White Bridge Road, Suite 300
                                           Nashville, TN 37205
                                           Telephone: (615) 256-8125
                                           Facsimile: (615) 242-7853
                                           E-mail: wcowan@dhhrplc.com

                                           ROBBINS ARROYO LLP
                                           BRIAN J. ROBBINS
                                           KEVIN A. SEELY
                                           ASHLEY R. RIFKIN
                                           STEVEN M. MCKANY
                                           600 B Street, Suite 1900
                                           San Diego, CA 92101
                                           Telephone: (619) 525-3990
                                           Facsimile: (619) 525-3991
                                           E-mail: brobbins@robbinsarroyo.com
                                                   kseely@robbinsarroyo.com
                                                   arifkin@robbinsarroyo.com
                                                   smckany@robbinsarroyo.com

                                           Attorneys for Plaintiff

1235625

## VERIFICATION

I, Charles Denham, hereby declare as follows:

I am the plaintiff in the within entitled action. I have read the Verified Stockholder Derivative Complaint for Breach of Fiduciary Duty, Waste of Corporate Assets, and Unjust Enrichment. Based upon discussions with and reliance upon my counsel, and as to those facts of which I have personal knowledge, the Complaint is true and correct to the best of my knowledge, information, and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Signed and Accepted:

Dated: _January 24, 2018_

_Charles R Denlow_
CHARLES DENHAM